UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION

United States of America and the State of Florida
*ex rel.* Thomas Bingham,

        Plaintiffs,

    v.

HCA, Inc.,

        Defendant.

Civil Action No.: 13-23671-Civ-COOKE

---

**OMNIBUS MOTION TO DISMISS AVENTURA-BASED ALLEGATIONS AND STRIKE IMPERMISSIBLE FACTS AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................... 1

II. STATEMENT OF FACTS ....................................................................................................... 1

III. LEGAL STANDARD ............................................................................................................. 2

IV. ARGUMENT .......................................................................................................................... 3

    A.    The Court Should Dismiss Relator's SAC Because Rule 9(b) And The FCA Do Not Permit Use Of Information Learned Through Discovery To Supplement Allegations ........... 3

        1.    The Court Should Strike All Facts Learned Through Discovery ............................. 4

        2.    Rule 9(b) Prohibits Use Of Information Learned Through Discovery ..................... 5

    B.    The Public Disclosure Bar Warrants Dismissal Of Relator's Aventura-based Allegations ........................................................................................................................ 8

    C.    The SAC Fails To Allege Violations Of The FCA ............................................................ 12

        1.    Relator Fails To Allege That Any Claim Was "False" ........................................... 12

            a.    Relator fails to plead an underlying violation of the Stark Law ................ 12

            b.    Relator fails to allege an underlying violation of the AKS ....................... 16

        2.    Relator Fails To Allege That Claims Were Submitted In Violation Of The FCA ........................................................................................................................ 19

    D.    All Claims Prior To October 10, 2007 Are Barred By The FCA's Statute Of Limitations ...................................................................................................................... 20

V. CONCLUSION ...................................................................................................................... 20

i

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### CASES

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..................................................................................................... 2, 3

*U.S. ex rel. Atkins v. McInteer,*
   470 F.3d 1350 (11th Cir. 2006) ......................................................................................... 3

*U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.,*
   473 F.3d 506 (3d Cir. 2007) ............................................................................................ 10

*AVCO Corp. v. Precision Air Parts, Inc.,*
   676 F.2d 494 (11th Cir. 1982) ......................................................................................... 20

*U.S. ex rel. Barber v. Paychex, Inc.,*
   No. 09-20990-Civ, 2010 WL 2836333 (S.D. Fla. July 15, 2010) ......................................... 9

*Battle v. Bd. of Regents,*
   468 F.3d 755 (11th Cir. 2006) ......................................................................................... 10

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ......................................................................................................... 3

*U.S. ex rel Bogina v. Medline Industries,*
   809 F.3d 365 (7th Cir. 2016) ............................................................................................ 4

*Brooks v. Blue Cross & Blue Shield,*
   116 F.3d 1364 (11th Cir. 1997) ......................................................................................... 8

*U.S. ex rel. Clausen v. Lab Corp. of Am., Inc.,*
   290 F.3d 1301 (11th Cir. 2002) ............................................................................. 3, 5, 19, 20

*Cooper v. Blue Cross & Blue Shield of Fl., Inc.,*
   19 F.3d 562 (11th Cir. 1994) ........................................................................................ 9, 10

*Cornelius v. Bank of Am., NA,*
   585 F. App'x. 996 (11th Cir. 2014) .................................................................................... 1

*Corsello v. Lincare, Inc.,*
   428 F.3d 1008 (11th Cir. 2005) ....................................................................................... 19

*De-Chu Christopher Tang v. Vaxin, Inc.,*
   No. 2:13-CV-401-SLB, 2015 WL 1487063 (N.D. Ala. Mar. 31, 2015) ................................... 5

ii

*U.S. ex rel. Eisenstein v. City of N.Y.*,
   556 U.S. 928 (2009) ........................................................................................ 6

*Foster v. Savannah Commc'n*,
   140 F. App'x. 905 (11th Cir. 2005), *aff'd*, 429 F. App'x 818 (11th Cir. 2011) ........................................ 20

*Friedlander v. Nims*,
   755 F.2d 810 (11th Cir. 1985) .......................................................................... 5

*Griffin Indus., Inc. v. Irvin*,
   496 F.3d 1189 (11th Cir. 2007) ........................................................................ 8

*Hanlester Network v. Shalala*,
   51 F.3d 1390 (9th Cir. 1995) ........................................................................... 17

*Harrison v. Westinghouse Savannah River Co.*,
   176 F.3d 776 (4th Cir. 1999) ............................................................................ 6

*U.S. ex rel. Hartwig v. Medtronic, Inc.*,
   No. 3:11cv413-CWR-LRA, 2014 WL 1324339 (S.D. Miss. Mar. 31, 2014) ............................ 10

*Horsley v. Feldt*,
   304 F.3d 1125 (11th Cir. 2002) ........................................................................ 8

*U.S. ex rel. Jamison v. McKesson Corp.*,
   No. 2:08CV214-SA-DAS, 2009 WL 3176168 (N.D. Miss. Sept. 29, 2009) ...................... 16, 17

*U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*,
   441 F.3d 552 (8th Cir. 2006) ......................................................................... 6, 19

*U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
   360 F.3d 220 (1st Cir. 2004) ............................................................................ 6

*U.S. ex rel. Keeler v. Eisai, Inc.*,
   568 F. App'x 783 (S.D. Fla. 2013) ..................................................................... 5

*Lawrence v. Dunbar*,
   919 F.2d 1025 (11th Cir. 1990) ........................................................................ 2

*U.S. ex rel. Morgan v. Express Scripts, Inc.*,
   602 F. App'x. 880 (3d Cir. 2015) ..................................................................... 11

*U.S. ex rel. Obert-Hong v. Advocate Health Care*,
   211 F. Supp. 2d 1045 (N.D. Ill. 2002) ............................................................... 17

*U.S. ex rel. Olsen v. Lockheed Martin Corp.*,
   No. 1:09-CV-3083-JEC, 2010 U.S. Dist. LEXIS 145114 (N.D. Ga. Sept. 17, 2010) .............................. 20

iii

*U.S. ex rel. Osheroff v. Humana, Inc.,*
  776 F.3d 805 (11th Cir. 2015) ........................................................................*passim*

*U.S. ex rel Osheroff v. Humana, Inc.,*
  No. 10-24486-cv-SCOLA, 2012 WL 4479072 (S.D. Fla. Sept. 28, 2012), aff'd 776 F.
  3d 805 (11th Cir. 2015) ........................................................................ 8

*U.S. ex rel. Osheroff v. Tenet,*
  No. 09-22253-CIV, 2012 WL 2871264 (S.D. Fla. July 12, 2012)........................ 18

*U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.,*
  565 F. Supp. 2d 153 (D.D.C. 2008)........................................................ 16

*Reyher v. Trans World Airlines, Inc.,*
  881 F. Supp. 574 (M.D.Fla. 1995).......................................................... 4, 5

*Rockwell Int'l Corp. v. U.S.,*
  549 U.S. 457 (2007)........................................................................ 11

*U.S. ex rel. Russell v. Epic Healthcare Management Group,*
  193 F.3d 304 (5th Cir. 1999) .............................................................. 6

*U.S. ex rel. Schaengold v. Mem'l Health, Inc.,*
  No. 4:11-cv-58, 2014 WL 7272598 (S.D. Ga. Dec. 18, 2014) ........................ 17

*U.S. ex rel. Schubert v. All Children's Health Sys., Inc.,*
  No. 8:11-cv-1687-T-27EAJ, 2013 WL 1651811 (M.D. Fla. Apr. 16, 2013) ............ 19

*U.S. ex rel. Singh v. Bradford Reg'l Med. Ctr.,*
  752 F. Supp. 2d 602 (W.D. Pa. 2010) ............................................ 13, 15, 16, 18

*U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Insurance Co.,*
  944 F.2d 1149 (3d Cir. 1991) .............................................................. 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
  551 U.S. 308 (2007)........................................................................ 7

*McNutt ex rel. U.S. v. Haleyville Med. Supplies, Inc.,*
  423 F.3d 1256 (11th Cir. 2005) ........................................................ 16

*U.S. v. Health Mgmt. Assocs., Inc.,*
  591 F. App'x. 693 (11th Cir. 2014) .................................................... 12

*U.S. v. McClatchey,*
  217 F.3d 823 (10th Cir. 2000) ........................................................ 17

*U.S. v. Rogan,*
  459 F. Supp. 2d 692 (N.D. Ill. 2006), *aff'd,* 517 F.3d 449 (7th Cir. 2008) ............ 17

iv

*U.S. v. Sosa,*
  777 F.3d 1279 (11th Cir. 2015) ............................................................... 18

*U.S. v. Sulzbach,*
  No. 07-61329-CIV, 2008 WL 1771841 (S.D. Fla. Apr. 15, 2008) ....................... 20

*Williams v. WMX Techs., Inc.,*
  112 F.3d 175 (5th Cir. 1997) ....................................................................... 6

*U.S. ex rel. Woods v. N. Ark. Reg'l Med. Ctr.,*
  No. 03-3086, 2006 WL 2583662 (W.D. Ark. Sept. 7, 2006) ............................ 17

## STATUTES

31 U.S.C. § 3729(a) ........................................................................................ 3

31 U.S.C. §§ 3729(a)(1)(A), (B) ..................................................................... 20

31 U.S.C. § 3730(e)(4) (2006) ...................................................................... 8, 9

31 U.S.C. § 3730(e)(4)(A) (2006) .............................................................. 4, 9, 10

31 U.S.C. § 3730(e)(4)(a)(ii) (2012) ................................................................. 9

31 U.S.C. § 3730(e)(4)(B) (2012) .................................................................... 11

31 U.S.C. § 3731(b) ...................................................................................... 20

42 U.S.C. § 1320a-7a(i)(6) ............................................................................ 16

42 U.S.C. § 1320a-7b ................................................................................... 16

42 U.S.C. § 1395nn(a)(1) .............................................................................. 12

## RULES

Fed. R. Civ. P.
  9(b) .............................................................................................. *passim*
  12(b)(1) ................................................................................... 1, 2, 9, 11
  12(b)(6) ........................................................................................ *passim*
  12(f) ............................................................................................... 1, 4

## REGULATIONS

42 C.F.R. § 411.351 ...................................................................................... 14

42 C.F.R. § 411.354 ...................................................................................... 13

42 C.F.R. § 411.354(c)(1)(i) (2010) ................................................................. 13

v

42 C.F.R. § 411.354(c)(2) ........................................................................................................ 13

66 Fed. Reg. 856 (Jan. 4, 2001) .............................................................................................. 13

66 Fed. Reg. at 866 ................................................................................................................. 13

66 Fed. Reg. at 877–78 ........................................................................................................... 14

73 Fed. Reg. 23,528 (Apr. 30, 2008) ...................................................................................... 15

SDI\1693662.11

Defendant HCA, Inc. ("HCA") submits this Omnibus Motion to Dismiss Aventura-based allegations in the Second Amended Complaint ("SAC") and Strike Impermissible Facts, and Memorandum of Law ("Motion") in support thereof pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(f) and 9(b).

## I. INTRODUCTION

In dismissing Relator Thomas Bingham's ("Relator's") First Amended Complaint ("FAC") with respect to Aventura, this Court saw through Relator's attempt to "shock and awe" the Court with reference to documents, numbers, and depositions to give the appearance of a factually dense scheme. (*See* Dkt. 66 at 13.) As the Court correctly recognized, the only details in the FAC were culled from public filings—the rest was a combination of "information and belief" allegations and "innuendo." (*Id.* at 14.) It was, as the Court aptly put it, "patently clear" that the Relator did not at the time he filed this action have direct knowledge of even the most basic details of the scheme he attempted to allege. (*Id.* at 13.)

Relator attempts to cure these pleading deficiencies with purported facts he learned through discovery. To allow this tactic would undermine Rule 9(b) and essentially eviscerate the Public Disclosure Bar of the False Claims Act. When stripped of the alleged facts that Relator learned through discovery, the SAC fails to state *any* claim.[1] The Court should dismiss the SAC's Aventura-based allegations with prejudice.[2]

## II. STATEMENT OF FACTS

In this non-intervened *qui tam* case, Relator alleges a real estate scheme through which HCA allegedly used third-party developers as a conduit to pass kickbacks and financial benefits to physicians in exchange for their Medicare and Medicaid referrals to HCA hospitals, in violation of the Stark Law and the

---

[1] In light of the Protective Order in place, Relator publicly filed a version of the SAC that redacts all information that was designated during discovery as "Confidential." The redacted SAC vividly illustrates those facts that Relator learned only through discovery.

[2] *See Cornelius v. Bank of Am., NA*, 585 F. App'x. 996, 1000 (11th Cir. 2014)(" Because [Plaintiff] already had been given an opportunity to correct his pleadings, the judge was not required to give him another chance.").

1

Anti-Kickback Statute ("AKS").  Relator claims that HCA violated the False Claims Act ("FCA") by knowingly submitting government claims tainted by these underlying violations of law.

On January 28, 2016, this Court granted in part HCA's motion to dismiss the FAC (Dkt. No. 38), dismissing all claims related to Aventura with leave to amend.  (Dkt. No. 66 at 14.)  On March 8, 2016, Relator filed his SAC.  (Dkt. No. 105.)  Relator's allegations focus on two hospitals: Aventura Hospital and Medical Center ("Aventura") in Florida and Centerpoint Medical Center in Missouri.[3]  With respect to Aventura, Relator alleges that HCA facilitated the construction of a medical office building (Aventura Heart & Health Building or "AHHB") by developer RTH Partners ("RTH") on its hospital campus beginning in 2002.  SAC ¶¶ 108-10.  Relator claims that HCA passed undue benefits to referring physicians by: (1) subsidizing the development of AHHB through a below fair market value ground lease and leasing space without a business need; (2) providing free parking to physicians; (3) requiring below-market rents; (4) requiring low rents and higher improvement allowances for high referrers; and (5) providing "use" permissions.  *See generally* SAC ¶¶ 108–246.  Relator claims that HCA developed these "schemes" to provide physicians with undue benefits in violation of the Stark Law and AKS, and that Aventura submitted false claims to government programs for services provided to patients referred by those physicians.

## III. LEGAL STANDARD

Rule 12(b)(1) of the Federal Rules of Civil Procedure requires dismissal if a court lacks subject matter jurisdiction over the allegations in a complaint.  Fed. R. Civ. P. 12(b)(1).  On a factual jurisdictional challenge, the Court may weigh evidence beyond the pleadings and the presumption of truthfulness does not attach to the plaintiff's allegations.  *See Lawrence v. Dunbar*, 919 F.2d 1025, 1029 (11th Cir. 1990).  Rule 12(b)(6) requires dismissal if a complaint fails to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, the complaint must "plead sufficient facts to state

---

[3] Relator's Centerpoint-based allegations in the SAC have not changed.  Per the Court's Order dated March 9, 2016 (Dkt. No. 113), HCA already filed its Motion for Partial Summary Judgment on the SAC's Centerpoint-Related Claims (Dkt. No. 131).

2

a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). A complaint is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007)). Although the court must accept all factual allegations as true and draw reasonable conclusions in Relator's favor, it is not required to credit "mere conclusory statements." *Id.* If the complaint has not pled sufficient facts to "nudg[e] the[] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 570.

To state a claim under the FCA, a complaint must allege that the defendant knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval. *U.S. ex rel. Atkins v. McInteer,* 470 F.3d 1350, 1357 (11th Cir. 2006) (citing 31 U.S.C. § 3729(a)). The Stark Law, AKS, and FCA allegations must all be pled with the particularity required by Rule 9(b). *See U.S. ex rel. Clausen v. Lab Corp. of Am., Inc.,* 290 F.3d 1301, 1302 (11th Cir. 2002). A plaintiff must specifically allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Clausen,* 290 F.3d at 1310 (citation omitted). The Eleventh Circuit has recognized that while these requirements of Rule 9(b) may make it difficult for a *qui tam* plaintiff to bring an action, they are necessary to prevent "speculative suits against innocent actors for fraud." *Id.* at 1308 (citation omitted).

## IV. ARGUMENT

### A. The Court Should Dismiss Relator's SAC Because Rule 9(b) And The FCA Do Not Permit Use Of Information Learned Through Discovery To Supplement Allegations

In assessing Relator's FAC, this Court made clear that Relator needed to significantly improve upon his pleading to satisfy Rule 9(b). (Dkt. 66 at 14 (noting Relator's "sparse pleading").) But nothing in

3

the Court's ruling provided permission to supplement this deficiency with documents and information obtained through the discovery process. Relator's use (and misuse) of the information obtained in discovery is another attempt to "shock and awe" the Court into believing that there are legally sustainable claims regarding Aventura. Relator has employed a brazen, impermissible tactic in this FCA case to camouflage his inability to plead a viable claim or show he is a proper relator. The SAC presents a case study in the public policy that underlies Rule 9(b). Any facts learned through discovery should be struck from the SAC.

The *qui tam* provisions of the FCA are designed to provide a bounty to relators who bring personal knowledge of wrongdoing to the Government's attention. *See U.S. ex rel Bogina v. Medline Industries,* 809 F.3d 365, 367 (7th Cir. 2016). Under Rule 9(b), a party must state *with particularity* the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). When, as here, information on which the action is based has been publicly disclosed in state reports and prior litigations, a relator may pursue the action only if he is an original source of the information forming the basis of his allegations. *See* 31 U.S.C. § 3730(e)(4)(A) (2006). A *qui tam* relator's "knowledge must have been direct and independent for the plaintiff to qualify as an original source." *U.S. ex rel. Osheroff v. Humana, Inc.,* 776 F.3d 805, 814 (11th Cir. 2015). The SAC conclusively establishes that Relator has neither direct nor independent knowledge of the facts he learned only through discovery, upon which he attempts to rely.

1.     The Court Should Strike All Facts Learned Through Discovery

Because Relator cannot use information learned exclusively through discovery to amend his complaint, HCA requests that the Court strike these facts from the SAC pursuant to Rule 12(f). Under Rule 12(f), a court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter," either on motion made by a party or *sua sponte.* Fed. R. Civ. P. 12(f). A motion to strike should be granted when "the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Reyher v. Trans World Airlines, Inc.,* 881 F. Supp. 574, 576

4

(M.D.Fla. 1995) (citing cases).  Material learned through discovery is "immaterial" because, as discussed below, it plainly cannot cure a FCA complaint that was dismissed for failure to satisfy 9(b), and any purported facts learned through discovery confuse the issues and prejudice HCA.  *Reyher*, 881 F. Supp. at 576.  The Court should strike these facts—easily identified as all information that has been redacted in the publicly-filed version of the SAC (Dkt. No. 105)—from the SAC.  The allegations that remain fail to satisfy Rule 9(b).

## 2.    Rule 9(b) Prohibits Use Of Information Learned Through Discovery

Even if the Court declines to strike the impermissible facts from the SAC, Eleventh Circuit law is clear that Rule 9(b), as applied to FCA cases, does not allow a relator to use discovery to overcome pleading hurdles.  *See Clausen*, 290 F.3d at 1313–14.  Yet, that is precisely what Relator has attempted here.  In *Clausen*, the Eleventh Circuit affirmed the dismissal of an amended complaint because the particularity requirement of Rule 9(b) "is a nullity if plaintiff gets a ticket to the discovery process without identifying a single false claim by amount."  *Id.* at 1307 (citation omitted).  It recognized the public policy behind denying FCA relators permission to cure their pleading deficiencies through discovery: "[W]hen a plaintiff does not specifically plead the minimum elements of their allegation, [he can] learn the complaint's bare essentials through discovery and may needlessly harm a defendants' [sic] goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements…This is especially so in cases involving the False Claims Act."  290 F.3d at 1313–14 n.24.[4]

---

[4] *See also Friedlander v. Nims*, 755 F.2d 810, 813 n.3 (11th Cir. 1985) (holding that the clear intent of Rule 9(b)'s particularity requirement is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed*); De-Chu Christopher Tang v. Vaxin, Inc.*, No. 2:13-CV-401-SLB, 2015 WL 1487063, at *3 (N.D. Ala. Mar. 31, 2015) (finding that granting plaintiff leave to amend in FCA case would be futile because the plaintiff could not, without discovery, allege how a false claim was actually submitted and that discovery in a FCA suit is not allowed as a means to identify claims); *U.S. ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 804–05 (S.D. Fla. 2013) (stating in an order dismissing the case that "allowing [relator] to use documents obtained in discovery to overcome pleading hurdles would circumvent the purpose of Rule 9(b)").

Other circuits agree.[5]  For example, in *U.S. ex rel. Russell v. Epic Healthcare Management Group*, the Fifth Circuit affirmed the dismissal of a relator's complaint under Rule 9(b), holding that to do otherwise would give relator a "ticket to the discovery process that the [FCA] does not contemplate."  193 F.3d 304, 309 (5th Cir. 1999).  Likewise, the First Circuit observed that "allowing a relator to plead generally at the outset and amend the complaint at the 12(b)(6) stage after discovery would be at odds with the FCA's procedures for filing a *qui tam* action and its protections for the government (which is, of course, the real party in interest in a *qui tam* action)."  *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.,* 360 F.3d 220, 231 (1st Cir. 2004), *abrogated in part on other grounds by U.S. ex rel. Eisenstein v. City of N.Y.*, 556 U.S. 928 (2009).  It noted that "the reluctance of courts to permit *qui tam* relators to use discovery to meet the requirements of Rule 9(b) reflects, in part, a concern that a *qui tam* plaintiff, who has suffered no injury in fact, may be particularly likely to file a suit as 'a pretext to uncover unknown wrongs.'"  *Id.*

Preventing Relator from using the information he learned in discovery in this manner also serves to protect the real parties in interest—the United States and the State of Florida.  As the *Karvelas* court explained, "allowing a *qui tam* relator to amend his or her complaint after conducting further discovery would mean that the government will have been compelled to decide whether or not to intervene absent complete information about the relator's cause of action."  *Id.* (citation omitted).  While the government may still intervene, it "will no longer have an opportunity to conduct a confidential and unhurried investigation of the new claims in the amended complaint."  *Id.* at 231 n.12 (citation omitted); *see also U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 560 (8th Cir. 2006) (allowing a relator to amend after discovery "is inconsistent with the relator's procedural obligations under the FCA and with the FCA's protections for the government").

The SAC is littered with references to documents and information learned exclusively through

---

[5] *See, e.g., Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 789 (4th Cir. 1999) ("The clear intent of Rule 9(b) is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed.") (citation omitted); *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

discovery.  For example, Exhibits 6–8 are the depositions of Mr. Michael Schubert, Mr. William Greenfield, and Mr. Davide Carbone, respectively—depositions that occurred as a result of this litigation.  The SAC further cites to numerous documents produced by HCA in this litigation.  *See, e.g.,* SAC ¶ 110 n.15 (citing HCA_0002427, HCA_0002130, HCA_00002258); *id.* ¶ 125 n.28 (citing HCA_0001809, HCA_0001823, HCA_0001835, HCA_00001892, HCA_0001934).   The few cited documents not produced by HCA were produced by third parties in response to subpoenas issued during discovery.  *See id.* ¶ 130 n.33 (citing Ventas-produced VMH_000197); *id.* ¶ 219 n.54 (citing Ventas-produced VMH_0001479).   The SAC similarly cites to the written discovery between the parties (*see* SAC ¶ 275 (citing HCA's First Supplemental Resp. to Interrogatories) and SAC Ex. 14 (excerpting same)) as well as discovery motions filed by HCA during the course of this litigation (*see, e.g.,* SAC ¶ 171 (citing HCA's Mot. for Protective Order)).  Essentially, everything substantive Relator now offers to try to save his SAC was derived through discovery.  (*See, e.g.,* Dkt. No. 105 at 29 (entire page redacted).)   What's worse, he has misleadingly cherry picked the evidence he presents, including only the facts that support his allegations, and ignoring other uncontradicted evidence obtained through discovery that undercuts his theory of the case.[6]

Even if the Court were to find that Relator could use discovery (which he cannot), and consider the allegations as drafted, as noted above and discussed at Section IV(C), Relator has picked apart discovery documents and transcripts to present a misleading picture.  When ruling on a motion to dismiss, a court limits its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).  If the Court permits Relator to

---

[6] For example, in continuing to allege that RTH had physician ownership and that HCA had knowledge of such physician ownership, and while citing elsewhere to Mr. Greenfield's deposition testimony, Relator ignores entirely Mr. Greenfield's uncontradicted testimony both in his deposition and in a sworn affidavit that RTH did not have physician ownership.  *Compare* SAC ¶ 162 (claiming that HCA "paid Greenfield knowing that he often shares profits with referring physicians") with SAC Ex. 7 (Greenfield Dep.) at 52:3–12 REDACTED   and Dkt. No. 79-2 at 4   REDACTED

7

include each and every document and deposition transcript obtained through discovery and attached to his SAC, then HCA too may argue from these same documents and transcripts. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint...then the Court may consider the documents part of the pleadings…").  To the extent the allegations in the SAC conflict with the exhibit itself, the exhibit controls.  *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").  To present such a misleading picture, as discussed below, is legally impermissible, especially given the policy behind the FCA and Rule 9(b).

> **B.** **The Public Disclosure Bar Warrants Dismissal Of Relator's Aventura-based Allegations**

The only Aventura-related facts not obtained through discovery, used by Relator in both his FAC and his SAC, come from a series of publicly-filed real estate documents that outline the financial arrangements between HCA and RTH (*see* SAC ¶¶ 138 n. 37, 145 n. 39, 312), various public websites, and Relator's own publicly filed complaint in a prior action (SAC ¶¶ 7, 163–65, 309).  His claims are thus subject to dismissal under the FCA's Public Disclosure Bar.

The prior version of the Public Disclosure Bar—which applies to conduct alleged to have occurred on or prior to March 23, 2010—provided that "[n]o court shall have *jurisdiction*" over an action *based on* publicly disclosed allegations or transactions.  31 U.S.C. § 3730(e)(4) (2006) (emphasis added); *U.S. ex rel Osheroff v. Humana, Inc.,* No. 10-24486-cv-SCOLA, 2012 WL 4479072, at *4, n.8 (S.D. Fla. Sept. 28, 2012), aff'd 776 F. 3d 805 (11th Cir. 2015).  For conduct alleged to have occurred after March 23, 2010, the court "*shall dismiss* an action or claim under this section, unless opposed by the Government, if *substantially the same* allegations or transactions as alleged in the action or claim were publicly disclosed"

in certain enumerated sources.  31 U.S.C. § 3730(e)(4) (2012) (emphasis added).[7]

The Eleventh Circuit has articulated a three-part test for the prior version of the Public Disclosure Bar: "(1) have the allegations made by the plaintiff been publicly disclosed; (2) if so, is the disclosed information the basis of the plaintiff's suit; [and] (3) if yes, is the plaintiff an 'original source' of that information."  *Cooper v. Blue Cross & Blue Shield of Fl., Inc.*, 19 F.3d 562, 565 n.4 (11th Cir. 1994).  The amended rule prohibits lawsuits where the allegations in the complaint are "substantially the same" as allegations or transactions contained in public disclosures, unless the plaintiff is an original source.  31 U.S.C. § 3730(e)(4)(A) (2012).  The Eleventh Circuit applies this standard in place of the second prong of the *Cooper* test when analyzing post-amendment claims.  *Osheroff,* 776 F.3d at 812.

Absent the facts learned through discovery, the SAC describes a series of real estate documents publicly filed at the Miami-Dade County clerk's office that outline the financial arrangements between HCA and RTH.  SAC ¶¶138 n. 37, 145 n. 39, 312.  These real estate documents constitute "administrative reports" which are public disclosures under the prior rule.[8]  *See, e.g., U.S. ex rel. Barber v. Paychex, Inc.,* No. 09-20990-Civ, 2010 WL 2836333, at *8 (S.D. Fla. July 15, 2010) (finding a company's filings to the SEC constitute administrative reports under the rule).  Relator himself notes other public sources he relies upon in the SAC, including The Greenfield Group's website[9] (SAC ¶¶ 166-69) and prior litigation (SAC ¶ 202 (citing *U.S. ex rel. Osheroff v. Tenet*)).

Moreover, Relator has repeatedly taken the position that the scheme he alleges in this action is

---

[7] For conduct occurring prior to March 2010, the statute presents a jurisdictional bar and a motion to dismiss is considered under Rule 12(b)(1), under which a court must weigh the parties' evidence.  For conduct occurring post-March 2010, the statute instead presents grounds for dismissal and a motion to dismiss is considered under Rule 12(b)(6), under which a court must take the facts alleged in the complaint as true, construing them in the light most favorable to the plaintiff.  *Osheroff,* 776 F.3d at 810 n.2.

[8] The amended rule considers only "federal" reports to be public disclosures.  31 U.S.C. § 3730(e)(4)(a)(ii) (2012).

[9] *See Osheroff,* 776 F.3d at 813 (publicly available websites qualify as news media for purposes of public disclosure provision).

9

broad, and encompasses the same scheme alleged in his publicly-filed prior *qui tam* action against HCA. *See, e.g.,* SAC ¶ 7 (referring to *Largo* as a "near-identical scheme"); *id.* at ¶¶ 162-65 (scheme alleged is "structurally similar to one of the schemes alleged in Relator's earlier case against HCA"); *id.* at ¶¶ 309 & n.75, 313 ("in Largo, Florida, HCA implemented the same scheme"); *see also* Relator's Mot. to Extend Deadlines (Dkt No. 52), Ex. 2; Relator's Opp'n Mot. Protective Order (Dkt. No. 59) at 1.   Under both versions of the rule, this is yet another public disclosure of the allegations upon which Relator bases his Aventura-related claims, even though the prior action was filed by Relator himself.   *See U.S. ex rel. Hartwig v. Medtronic, Inc.,* No. 3:11cv413-CWR-LRA, 2014 WL 1324339, at *9 (S.D. Miss. Mar. 31, 2014) ("[I]t is well settled that any information disclosed through civil litigation and on file with the clerk's office should be considered a public disclosure of allegations in a civil hearing for purposes of section 3730(e)(4)(A)."); *see also U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.,* 473 F.3d 506, 521 (3d Cir. 2007) (rejecting relator's argument that his prior *qui tam* action cannot be a public disclosure because the relator himself was the source of the public disclosure in the prior action).   The transactions at issue were publicly disclosed, meeting the first part of the *Cooper* test.

Next the Court must determine whether the disclosed information forms the basis of Relator's action (for pre-March 2010 claims) or whether the SAC's allegations are "substantially the same" as the publicly disclosed allegations (for later filed claims). O*sheroff,* 776 F. 3d at 810.  This "quick trigger" test is satisfied under the prior rule when, as here, the claims are based "in any part" on publicly disclosed information.  *Battle v. Bd. of Regents,* 468 F.3d 755, 762 (11th Cir. 2006); *Cooper,* 19 F.3d at 568, n.10. The post-amendment test is satisfied because the allegations in the SAC are substantially similar to the publicly disclosed information, which describe both the particular publicly recorded transactions and the same "scheme" alleged in Relator's prior action. *See Osheroff,* 776 F. 3d at 810.

The final inquiry under *Cooper* is whether Relator is the original source of the information in the SAC.   Under the pre-2010 Public Disclosure Bar, "the plaintiff's knowledge must have been direct and

10

independent for the plaintiff to qualify as an original source." *Osheroff*, 776 F.3d at 814.  Relator does not

have direct and independent knowledge of either the facts contained in the public disclosures or any other

facts alleged with respect to Aventura in the SAC, all of which were learned exclusively through discovery.

*See Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457, 470-72 (2007).  The Public Disclosure Bar was "designed to

preclude *qui tam* suits based on information that would have been equally available to strangers to the

fraud transaction had they chosen to look for it…*Information gleaned in litigation and on file in the clerk's

office falls in this category*."  *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Insurance

Co.*, 944 F.2d 1149, 1155-56 (3d Cir. 1991) (emphasis added).   Merely reviewing publicly-disclosed

documents and using "special skills" to "reveal" the scheme (SAC ¶ 12-13) is not enough, because "the

mere fact that [Relator] quantified the [publicly-disclosed information] does not remove his allegations from

the public disclosure realm."  *U.S. ex rel. Morgan v. Express Scripts, Inc.*, 602 F. App'x. 880, 883 (3d Cir.

2015); *see also Stinson.*, 944 F.2d at 1160 (relator must possess substantive information, rather than

merely background information, because "[i]f the latter were enough to qualify the relator as an 'original

source,' then a cryptographer who translated a ciphered document in a public court record would be an

'original source,' an unlikely interpretation of the phrase").  The Court should dismiss Relator's pre-March

23, 2010 claims under Rule 12(b)(1) for lack of subject matter jurisdiction.

Relator similarly fails under the amended statute, which defines an original source or someone who

has "knowledge that is independent of and materially adds to the publicly disclosed allegations or

transactions *and* who has voluntarily provided the information to the Government before filing an action

under this section."  31 U.S.C. § 3730(e)(4)(B) (2012) (emphasis added).  As above, all of the SAC's

allegations other than those derived from documents available to the public were learned exclusively

through discovery from HCA or other third-parties, and thus cannot have been provided by Relator to the

Government *before he filed this action*.  The only other facts upon which Relator relies come directly from

publicly available documents, and thus his knowledge lacks the requisite independence and does not

materially add to the public disclosures.  *See Osheroff,* 776 F.3d at 815.  Relator is not an original source with respect to conduct occuring after March 23, 2010, either, and the Court should dismiss such claims under Rule 12(b)(6).

C.      The SAC Fails To Allege Violations Of The FCA

A review of Relator's publicly-filed SAC demonstrates that, once the alleged facts Relator learned exclusively through discovery are stripped away, he has utterly failed to provide the particularity required to properly state a claim under the FCA.  Indeed, without the benefit of the impermissibly-used facts, Relator's SAC is nearly illegible.  (*See* Dkt. No. 105.)  But *even with* the benefit of facts learned exclusively through discovery, Relator still fails to state a claim for relief, especially when his exhibits are viewed in their entirety, as they must be (*see supra* Section IV(A)(2)).  As such, his SAC should be dismissed.

1.      Relator Fails To Allege That Any Claim Was "False"

Relator asserts that claims submitted by Aventura were rendered "legally false" by virtue of underlying violations of the Stark Law and AKS.  But even taking all of his scant factual allegations as true, and when viewing his exhibits in their entirety, Relator's SAC fails to show any transaction between HCA, RTH and any physician that resulted in prohibited payments or kickbacks.  Rather, he continues to allege the existence of a number of fully legal real estate arrangements.  Relator's failure to plead specific facts supporting each element of an underlying Stark Law or AKS violation means that no false claims could have been submitted and the SAC must be dismissed.

a.      *Relator fails to plead an underlying violation of the Stark Law*

To establish a violation of the Stark Law, Relator must prove that: (i) a physician, (ii) with a non-excepted "financial relationship" with the hospital, (iii) made a referral to the hospital for designated health services, and (iv) the hospital submitted a claim to Medicare for such services.  *See* 42 U.S.C. § 1395nn(a)(1).  To satisfy 12(b)(6) and 9(b), a relator must plead specific facts showing that a "financial relationship," as defined by Stark, exists between a physician and a hospital.  *U.S. v. Health Mgmt.*

12

*Assocs., Inc.,* 591 F. App'x. 693, 698 (11th Cir. 2014).  If the terms of the definition are not met, there is no financial relationship between the physician and the hospital, and the Stark Law does not apply.  *See* 66 Fed. Reg. 856, 864 (Jan. 4, 2001) ("[t]he existence of a financial relationship…is the factual predicate for triggering the application" of the Stark Law).

The transactions alleged in the SAC describe potential indirect compensation arrangements resulting from a series of separate agreements HCA and physician tenants had with RTH.[10]  42 C.F.R. § 411.354; SAC ¶ 210.  But Relator fails to plead facts demonstrating that these arrangements satisfy the regulatory definition of an "indirect compensation arrangement."  An indirect compensation arrangement exists only when all three of the following elements are present: (1) the hospital and the physician are connected by an unbroken chain of entities with financial relationships between them; (2) the aggregate compensation received by the physician "varies with, or takes into account, the volume or value of referrals or other business generated by the referring physician" for the hospital; and (3) the hospital actually knows, recklessly disregards, or is deliberately ignorant, of the fact that the physician's compensation so varies or takes into account.  *See* 42 C.F.R. § 411.354(c)(2).  The facts in the SAC do not establish that the aggregate compensation received by any physician varies with, or takes into account, the volume or value of referrals to HCA.  In making the "volume or value of referrals" inquiry, the Stark Law requires an analysis of the compensation arrangement closest to the referring physicians—Relator must plead facts sufficient to show that the leases between RTH and physicians varied with or took into account patient referrals to HCA. 66 Fed. Reg. at 866; *U.S. ex rel. Singh v. Bradford Reg'l Med. Ctr.,* 752 F. Supp. 2d 602, 621 (W.D. Pa. 2010).[11]  A compensation arrangement "does not take into account the volume or value of referrals or other

---

[10] A direct compensation arrangement exists if remuneration passes between the referring physician and the entity furnishing DHS (the hospital) without any intervening persons or entities.  *See* 42 C.F.R. § 411.354(c)(1)(i) (2010).

[11] The SAC reflects a continued misunderstanding on this point, as it continues to challenge the financial arrangements between HCA and RTH.

business generated between the parties if the compensation is fixed in advance and will result in fair market value compensation, and the compensation does not vary over the term of the arrangement in any manner that takes into account referrals or other business generated." 66 Fed. Reg. at 877–78.  And *even if* the SAC had adequately alleged that any lease varied with or took into account volume or value of referrals, Relator has not alleged facts sufficient to show that HCA knew, recklessly disregarded or was deliberately ignorant thereof.

The SAC does not plausibly allege that compensation was not fixed in advance for each lease at a per square foot rental rate, with pre-determined TI, for a fixed lease term, nor does it allege that the rental rate or any other component of the leases varied over the term of the agreement in any matter that took referrals into account.   Indeed, Relator's Exhibits 6 and 8 demonstrate that it was REDACTED

REDACTED                                    , and that neither of the former-HCA employees was even aware of the potential referral volume or value from those physicians. *See, e.g.,* SAC Ex. 6 at 33, 91                                REDACTED

; SAC Ex. 8 at 30, 79-83                          REDACTED

. This is the very definition of a fair market value exchange under the Stark Law: "the value in arm's-length transactions consistent with…the compensation that would be included…as a result of bona fide bargaining between well-informed parties to the agreement who are not otherwise in a position to generate business for the other party." 42 C.F.R. § 411.351.

The SAC merely demonstrates that                          REDACTED

allegations utterly devoid of detail sufficient to indicate that the volume or value of referrals was considered in that process.  SAC ¶207.  Relator's allegations regarding TI allowances are similarly perplexing—the precise facts that Relator includes to show a supposed correlation between referrals and TI allowances

14

demonstrate that there is no correlation whatsoever.  SAC ¶ 217.[12]

Relator has failed to demonstrate that any physician's lease reflected terms that were not fair market value.  He claims that rents                     REDACTED                     . SAC ¶ 204.  This is comparing apples to oranges.  Likewise, his assertions that rates from a study in a separate litigation or the rates at Palmetto Hospital are somehow indicative of fair market value—without any discussion of the year that study was conducted, whether any of the rates identified were net as opposed to gross, for usable square feet or rentable square feet, or any other details that would confirm their relevance to a fair market value analysis *here*—must fail.  SAC ¶¶ 205-06.  Critically, the very document Relator relies on to argue that the ground lease between HCA and RTH was below fair market value—an appraisal conducted over a year after the development—notes that the MOB space lease rates                REDACTED

" SAC Ex. 4 at 48.  In light of that, and absent some showing that a physician's compensation or lease rate "was arrived at by considering the amount of business" to be generated, Relator fails to plausibly plead a financial arrangement under the Stark Law.  *Singh*, 752 F. Supp. 2d at 632; *see* 73 Fed. Reg. 23,528, 23,687 (Apr. 30, 2008); *Drakeford*, 675 F.3d at 409.

The SAC similarly alleges no specific facts to support the conclusion that any physician had a profit-sharing or ownership interest in RTH or AHHB in this transaction.  Relator merely concludes that "HCA knows Greenfield often shares profits with physician tenants."  (SAC ¶ 162.)  Yet again, the very discovery submitted by Relator demonstrates that exactly the opposite is true—there was no physician ownership in RTH or AHHB.  *See supra* note 6.  Relator continues to "infer" that RTH had physician ownership, without any factual support.  SAC ¶ 173.  Finally, Relator makes the bald allegation that HCA had knowledge, or acted in reckless disregard, of the fact that referring-physician tenants received

---

[12]                     REDACTED

compensation that took into account the volume or value of referrals, without pointing to a shred of factual support for such a claim.  SAC ¶ 302.  The SAC's Stark-related allegations should be dismissed.

b.  *Relator fails to allege an underlying violation of the AKS*

The AKS imposes criminal liability on any person who knowingly and willfully offers or pays remuneration to induce or reward referrals of items or services reimbursable by a federal health care program.  *See* 42 U.S.C. § 1320a-7b.  To make out a prima facie case that a defendant violated the AKS, the SAC must allege that HCA offered or paid remuneration with the intent to induce referrals, and knew that its conduct was wrongful.  *See McNutt ex rel. U.S. v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1258-60 (11th Cir. 2005).  The AKS is an intent-based statute with two separate heightened intent elements.  Relator must allege that HCA acted both "knowingly and willfully," (*i.e.*, with intent to violate the law), and with intent to offer or pay remuneration in exchange for referrals.  *See Singh*, 752 F. Supp. 2d at 640.  The SAC fails to adequately allege either remuneration or the requisite intent.

The AKS defines "remuneration" to include "transfers of items or services for free or other than fair market value."  *See, e.g., U.S. ex rel. Jamison v. McKesson Corp.*, No. 2:08CV214-SA-DAS, 2009 WL 3176168, at *10 (N.D. Miss. Sept. 29, 2009) (quoting 42 U.S.C. §1320a-7a(i)(6)); *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, 565 F. Supp. 2d 153, 162 (D.D.C. 2008) (same).  To adequately plead remuneration, Relator must specifically allege facts showing both (i) the fair market value of the physician's arrangements with RTH; and (ii) that the physicians received some benefit from HCA in connection with these arrangements that was something other than a fair market value exchange.

Relator's "kickback" scheme is premised on his theory that HCA provided financial benefits to RTH, and that RTH in turn passed those benefits through to physician tenants with the intent of inducing the physicians to refer to the hospital.  *Even if* the ground lease to RTH was below fair market value (which it was not), the benefit would have inured to RTH—not physician tenants.  SAC ¶¶127–29, 144.  Relator claims that the physician tenants received some financial benefit from that arrangement through (i) an

16

equity or profit-sharing interest in RTH; (ii) parking rights as tenants in the MOB; and (iii) low rents and high tenant improvement allowances. *See* SAC ¶¶ 108–246. As discussed above, Relator has no facts to support his suspicion of an equity or profit-sharing interest. And, the appraisal that Relator himself has attached as an exhibit clearly demonstrates that the                            REDACTED

                                                                SAC Ex. 5. If the lease rates paid by the physician tenants are consistent with amounts paid for a similar package of rights and benefits in that market, then by definition there can be no "transfer of value" to the physician in exchange for referrals. Courts have repeatedly found fair market value to be a key consideration when determining whether an exchange of goods or services constituted remuneration under the statute. *See Jamison*, 2009 WL 3176168, at *10. [13]

Relator also must allege that remuneration was provided with the intent to induce referrals. *U.S. ex rel. Schaengold v. Mem'l Health, Inc.*, No. 4:11-cv-58, 2014 WL 7272598, at *14 (S.D. Ga. Dec. 18, 2014). "Intent to induce" means "an intent to exercise influence over the reason or judgment of another in an effort to cause the referral of program-related business." *See Hanlester Network v. Shalala*, 51 F.3d 1390, 1398 (9th Cir. 1995). Absent any showing that HCA intended to influence referrals, Relator's claims must fail. Simply alleging that Aventura entered into a financial relationship with a physician that it hoped or expected would refer to it is not enough, as a "hospital or individual may lawfully enter into a business relationship with a doctor and even hope for or expect referrals from that doctor, so long as the hospital is motivated to enter into the relationship for legal reasons entirely distinct from its collateral hope for referrals." *U.S. v. McClatchey*, 217 F.3d 823, 834 (10th Cir. 2000); *see also U.S. v. Rogan*, 459 F. Supp. 2d 692, 714 (N.D.

---

[13] *See also U.S. ex rel. Woods v. N. Ark. Reg'l Med. Ctr.*, No. 03-3086, 2006 WL 2583662, at *4 (W.D. Ark. Sept. 7, 2006) (dismissal with prejudice when relator failed to plead the fair market value of leased office space and to identify what was paid outside of the fair market value range); *U.S. ex rel. Obert-Hong v. Advocate Health Care*, 211 F. Supp. 2d 1045, 1049 & n.3 (N.D. Ill. 2002) (noting that "[t]o comply with the [AKS], the hospital must simply pay fair market value..." and dismissing FCA claim for failure to plead with particularity details which would support an inference that the hospital paid greater than fair market value).

17

Ill. 2006) ("[A] hope, expectation or belief that referrals may ensue from remuneration for legitimate services is not a violation of the [AKS]."), *aff'd*, 517 F.3d 449 (7th Cir. 2008).  Relator provides misleading citations to depositions taking during this litigation (SAC ¶¶ 158–59), in which Mr. Schubert                    REDACTED

                    , and Mr. Carbone                    REDACTED                    but then relies on his own conjecture that the arrangement "makes commercial sense only with consideration of potential referrals." SAC ¶ 155.  Relator's speculation fails to evidence such intent on the part of any person at HCA. Exhibit 8 demonstrates                    REDACTED

                    SAC Ex. 8 at 79-83.  Never did either Mr. Schubert or Mr. Carbone suggest that the hospital was directing lower rents in exchange for referrals.  If anything, Relator's citations demonstrate that

                    REDACTED                    Relator still does not (and indeed cannot) allege that referrals were a condition of any lease or equity arrangement, that physicians were pressured to refer in exchange for any lease term or that it was ever suggested to any physician that future leases would be on less favorable terms of the physician failed to refer.  *See, e.g., U.S. ex rel. Osheroff v. Tenet*, No. 09-22253-CIV, 2012 WL 2871264, at *8 (S.D. Fla. July 12, 2012) (granting motion to dismiss in part because "no factual allegations suggest[ed] any quid pro quo of below-fair market-value leases in exchange for referrals [or] that any physician-tenants felt pressure to refer patients to Defendants instead of other medical entities on account of their favorable rent, nor allegations that insufficient referral numbers to Defendants would cause or were feared to cause rental rate penalties in future lease renewals").

    Finally, to allege a violation of the AKS, the SAC must contain some facts sufficient to support a finding that HCA *knowingly and willfully* violated the statute.  *See Singh*, 752 F. Supp. 2d at 640.; *U.S. v. Sosa*, 777 F.3d 1279, 1293 (11th Cir. 2015) ("willfully" means that a person "must have acted voluntarily and purposely, with the specific intent to do something the law forbids, that is with a bad purpose, either to disobey or disregard the law.").  Relator's SAC is devoid of allegations that anyone at HCA believed the physician leases and other arrangements were outside of the range of fair market value or that the

18

transactions at issue violated the law—indeed, he cites to various documents suggesting HCA required the development to be compliant and believed that it was.  (*See, e.g.,* SAC Ex. 5 (Callaway & Price Appraisal); SAC ¶ 146 (citing Sponsorship Agreement).)  His claims thus fail.

      2.      **Relator Fails To Allege That Claims Were Submitted In Violation Of The FCA**

Given that FCA liability is predicated upon a defendant knowingly asking the government to pay amounts it does not owe, Rule 9(b) requires specific details about the who, what, where, when and how of the actual false claims submitted.  *Clausen*, 290 F.3d at 1311.  "Because it is the submission of a fraudulent claim that gives rise to liability under the [FCA], that submission must be pleaded with particularity and not inferred from the circumstances."  *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013 (11th Cir. 2005).  In the absence of identifying specific claims for payment that were rendered false by underlying regulatory violation, the Eleventh Circuit requires "some indicia of reliability" to support an allegation that actual false claims for payment were made to the government.  *Clausen*, 290 F.3d at 1311; *see also U.S. ex rel. Schubert v. All Children's Health Sys., Inc.*, No. 8:11-cv-1687-T-27EAJ, 2013 WL 1651811, at *4 (M.D. Fla. Apr. 16, 2013).  However, even with the discovery from HCA, Relator alleges no facts whatsoever to suggest that false claims were knowingly submitted.  The claims data provided by HCA REDACTED

(SAC Ex. 14).  This information lends no support to Relator's allegation that false claims were actually submitted by Aventura for physicians who were tenants at AHHB, and it certainly does not provide the required who, what, where, or when of those particular claims.  *See Corsello*, 428 F.3d at 1013.  In *Joshi*, for example, the Eighth Circuit found that relator's proposed amendment labeling *every* invoice involving nurse anesthetist work fraudulent was simply "a *post hoc* interpretation that is unsupported by…generalized and vague language."  441 F.3d at

19

556.[14]  HCA regularly files hundreds of thousands of claims with the government.  Without knowing which claims are allegedly false, HCA cannot prepare a meaningful responsive pleading or properly defend itself. Because Relator cannot allege "indicia of reliability…to support the allegation of an actual false claim for payment being made to the Government" (*Clausen*, 290 F.3d at 1311), his allegations must be dismissed.

### D.   All Claims Prior To October 10, 2007 Are Barred By The FCA's Statute Of Limitations

A statute of limitations defense may be raised on a Rule 12(b)(6) motion to dismiss when failure to satisfy the statute of limitations is shown on the face of the complaint.  *AVCO Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982); *see also U.S. v. Sulzbach*, No. 07-61329-CIV, 2008 WL 1771841, at *1 (S.D. Fla. Apr. 15, 2008) ("[D]ismissal on statute of limitations grounds is appropriate if it is apparent from the face of the complaint that the claim is time-barred.") (citation omitted).  Relator brings his federal FCA claims under 31 U.S.C. §§ 3729(a)(1)(A), (B), which have a six-year statute of limitations in non-intervened cases.  31 U.S.C. § 3731(b); *see also U.S. ex rel. Olsen v. Lockheed Martin Corp.*, No. 1:09-CV-3083-JEC, 2010 U.S. Dist. LEXIS 145114 at *14-15 (N.D. Ga. Sept. 17, 2010) (citing *Foster v. Savannah Commc'n*, 140 F. App'x. 905, 907 (11th Cir. 2005)), *aff'd*, 429 F. App'x 818 (11th Cir. 2011)).  Thus, the applicable statute of limitations for Relator's claims is six years prior to the filing of the complaint.  Relator's Complaint was filed on October 10, 2013.  Therefore, any alleged FCA violations that occurred on or before October 10, 2007 are barred.

## V. CONCLUSION

For the foregoing reasons, HCA respectfully requests that the Court dismiss Relator's Aventura-based allegations in their entirety, with prejudice, and strike all facts learned through discovery from Relator's SAC.

---

[14]      **REDACTED**            Relator has alleged *no facts whatsoever* to allow even an inference that claims occurring under the new owner, Ventas, were somehow tainted.  Indeed, Relator points to               **REDACTED**                SAC ¶¶ 204,209.  Yet, HCA's data includes claims through the end of 2015.

20

DATED:  March 22, 2016            Respectfully submitted,


/s/Katherine A. Lauer                          /s/Martin B. Goldberg

Katherine A. Lauer                             Martin B. Goldberg
Jason M. Ohta                                  Greg J. Weintraub
Katherine E. A. McGrath                        Florida Bar No. 0827029
Kristin P. Housh                               LASH & GOLDBERG LLP
California Bar No. 138010                       100 S.E. Second Street, Suite 1200
LATHAM & WATKINS LLP                            Miami, Florida 33131
12670 High Bluff Drive                          Telephone: (305) 347-4040
San Diego, CA 92130                             Facsimile: (305) 347-4050
Telephone: (858) 523-5400                       mgoldberg@lashgoldberg.com
Facsimile: (858) 523-5450
katherine.lauer@lw.com

*ATTORNEYS FOR DEFENDANT HCA, INC.*


## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on March 22, 2016, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

                              By:    /s/ Greg Weintraub
                                     Greg Weintraub


## SERVICE LIST

**Phillip E. Benson**
Warren-Benson Law Group
7825 Washington Avenue, Suite 500
Eden Prairie, MN 55439
952-955-3688
philbenson@warrenbensonlaw.com

**Jonathan Evan Kroner**
420 Lincoln Road, Suite 248
Miami Beach, FL 33139
305-310-6046
jk@floridafalseclaim.com

**Mark Alan Lavine**
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132
305-961-9303

305-530-7139 (fax)
mark.lavine@usdoj.gov

**Jill Marie Bennett**
Office of Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-6536
850-414-3300
850-487-9475 (fax)
Jill.Bennett@myfloridalegal.com

**James B. Helmer, Jr.**
**Robert M. Rice**
**Erin M. Campbell**
Helmer, Rice & Popham, Co., L.P.A.
600 Vine Street, Suite 2704
Cincinnati, Ohio 45202
513-421-2400
jhelmer@fcalawfirm.com
rrice@fcalawfirm.com
ecampbell@fcalawfirm.com

SDI\1693662.11